UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 3:22-cr-00014 |
| | ) |
| ELBERT BRYANT GLEAVES | ) |
| COREY MONTE PICKETT | ) |
| DEZZION JOEDON PICKETT | ) |

# MEMORANDUM OPINION

On April 11, 2022, a federal grand jury returned an eight-count Superseding Indictment. Counts One, Two and Four allege the unlawful and knowing possession of ammunition on March 18, 2021 by all three defendants – each a convicted felon – in violation of 18 U.S.C. §§ 922(g)(l). Count Three alleges that Corey Pickett's possession of ammunition that day also violated 18 U.S.C. § 922(g)(9) because he had previously been convicted of a misdemeanor crime of violence. Counts Five and Six allege that Elbert Gleaves and Dezzion Pickett unlawfully possessed a firearm, on August 31, 2021 and December 21, 2021, respectively, again in violation of 18 U.S.C. §§ 922(g)(l). Count Seven charges D. Pickett with knowingly possessing with intent to distribute fentanyl and marijuana on December 21, 2021 in violation of 21 U.S.C. § 841(a)(1), and Count Eight charges him with possessing a firearm in furtherance of that crime in violation of 18 U.S.C. 924(c)(1)(A).

Now before the Court are motions filed by both Picketts. C. Pickett moves to dismiss Counts Two and Three, as does D. Pickett in relation to Counts Four and Six. D. Pickett also moves to sever the first five counts from the last three counts.

## I.  C. Pickett's Motions to Dismiss Counts Two and Three (Doc. Nos. 72, 74) &D. Pickett's Motion to Dismiss Counts Four and Six (Doc. No. 90)

Last term, in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, ___ U.S. ___, 142 S. Ct. 2111 (2022), the United States Supreme Court rejected the two-step test that various courts of appeals (including the Sixth Circuit[1]) applied to Second Amendment challenges. Generally speaking, at the first step (usually called the "history test"), the government could justify its regulation by "establish[ing] that the challenged law regulates activity falling outside the scope of the [Second Amendment] right as originally understood," by the Framers of the Constitution. Id. at 2126. "If the government can prove that the regulated conduct falls beyond the Amendment's original scope, then the analysis can stop there; the regulated activity is categorically unprotected." Id. (internal quotation marks omitted). If necessary, however, a court would then proceed to the second prong (the "means/end test") and analyze "how close the law comes to the core of the Second Amendment right" along with "the severity of the law's burden on that right." Id.

In Bruen, however, the Supreme Court found this to be "one step too many." Id. at 2127. Instead, and consistent with its earlier decision in District of Columbia v. Heller, 554 U.S. 570 (2008), the Supreme Court held that the proper test "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." Bruen, 142 S. Ct. at 2131.

Notwithstanding Heller's observation that the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms" for self-defense, Heller, 554 U.S. at 635, and Bruen's acknowledgment that the petitioners before the court were

---

[1] United States v. Greeno, 679 F.3d 510, 518 (6th Cir. 2012).

2

"undisputed[ly] . . . ordinary law-abiding, adult citizens" who presented the issue of whether the "Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms," Bruen, at 2134, Defendants contend the firearm charges in this case must be dismissed as unconstitutional based on Bruen. It appears that every court to have considered the matter has disagreed, with at least one court observing that such arguments constitute a "fantastical reading of Bruen," United States v. Isaac, No. 522CR117LCBHNJ1, 2023 WL 1415597, at *2 (N.D. Ala. Jan. 31, 2023), and another observing that those advancing such arguments "see[] something in Bruen that simply is not there," United States v. Medrano, No. 3:21-CR-39, 2023 WL 122650, at *1 (W.D. Va. Jan. 6, 2023); see, United States v. Moore, No. 3:20-CR-00474-IM-1, 2023 WL 154588, at *2 (D. Or. Jan. 11, 2023) (collecting cases rejecting challenges by defendants to the constitutionality of Section 922(g)(1) post-Bruen); United States v. Butts, No. CR 22-33-M-DWM, 2022 WL 16553037, at *4 (D. Mont. Oct. 31, 2022) (same).

In accordance with Bruen's statement that the Government has the burden of showing that a restriction is supported by "this Nation's historical tradition of firearm regulation," the Government's brief in this case discusses at length this country's "longstanding constitutional tradition of felon-disarmament laws." (See Doc. No. 103 at 8-23). Defendants have not filed a response to the Government's historical analysis. Recognizing that it is being presented with "the arguments of non-historian lawyers, citing cases by non-historian judges, who relied on arguments by other non-historian lawyers," United States v. Kelly, No. 3:22-CR-00037, 2022 WL 17336578, at *3 (M.D. Tenn. Nov. 16, 2022), the Court has no real basis to dispute the characterization of that history.

Regardless, and whatever lesson Bruen was intended to teach, this Court need not pretend

3

that it is writing on an empty chalkboard when the overwhelming weight – if not all post-Bruen decisions – have rejected the contention that the felon-in-possession laws are now unconstitutional. In its brief, the Government cites 89 district court decisions that have rejected the same sort of arguments as those presented here. (Doc. No. 105 at 24, n. 12).[2] In the week or so since the Government's filing, at least six more decisions have been rendered, again unanimously reaching the conclusion that Section 922(g)(1) is constitutional, notwithstanding Bruen. See, United States v. Isaac, 5:22-cr-117-LCB-HNJ-1, 2023 WL 1415597, at *1 (N.D. Ala. Jan. 31, 2023); United States v. Taylor, No. 322CR00022GFVTEBA1, 2023 WL 1423725, at *4 (E.D. Ky. Jan. 31, 2023); United States v. Barber, No. 4:20-CR-384-SDJ, 2023 WL 1073667 (E.D. Tex. Jan. 27, 2023); United States v. Brown, No. CR 20-260-1, 2023 WL 424260, at *3 (E.D. Pa. Jan. 26, 2023); United States v. Rush, No. 22-CR-40008-JPG, 2023 WL 403774, at *3 (S.D. Ill. Jan. 25, 2023); United States v. Davis, No. CR 5:19-159-DCR, 2023 WL 373172, at *2 (E.D. Ky. Jan. 24, 2023).

Having read a great number of those opinions, having considered the Sixth Circuit's pre-Bruen jurisprudence regarding the constitutionality of Section 922(g)(1), see, e.g., United States v. Napier, 233 F.3d 394, 403 (6th Cir. 2000) (noting that "[e]very circuit court which has had occasion to address the issue has upheld § 922 generally against challenges under the Second Amendment"), and having throughly reviewed the parties' arguments in this case, the Court agrees with the overwhelming consensus that Bruen is not an elixir for a federal firearm law violation committed by a felon. It does so, however, with a couple of observations.

First, it is far from clear that the Supreme Court in Bruen intended it opinion to be a

---

[2] A panel of the Third Circuit reached the same conclusion in Range v. Attorney General, 53 F.4th 262 (3d Cir. 2022), but that decision was vacated for rehearing *en banc*, 56 F.4th 993 (3d Cir. 2023).

wholesale evisceration of settled felon-in-possession laws. Take for example, the opening paragraph of the opinion:

> In <u>District of Columbia v. Heller</u>, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and <u>McDonald v. Chicago</u>, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), we recognized that the Second and Fourteenth Amendments protect the right of an *ordinary, law-abiding citizen* to possess a handgun in the home for self-defense. In this case, petitioners and respondents agree that *ordinary, law-abiding citizens* have a similar right to carry handguns publicly for their self-defense. We too agree, and now hold, consistent with <u>Heller</u> and <u>McDonald</u>, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

<u>Bruen</u>, 142 S. Ct. at 2122 (emphasis added) On no less than 10 occasions thereafter, the majority opinion speaks in terms of "law-abiding" citizens, <u>id.</u> at 2125, 2131, 2133, 2134, 2138, 2150, 2156, something that, by definition, felons in possession of a firearm are not. Moreover,

> [t]he concurrences and dissent in <u>Bruen</u> underscore that the Supreme Court foresaw the legal challenges which may arise as a result of <u>Bruen</u>, including the issue now raised in the present motion[s] to dismiss[.] That Justices Kavanaugh, Roberts, and Alito each determined the need to highlight the particular language in <u>Heller</u> setting forth certain presumptively lawful "longstanding prohibitions" demonstrates a desire to make clear the limits of the Supreme Court's decision in <u>Bruen</u> and to emphasize the remaining viability of the Supreme Court's statements in <u>Heller</u> and its progeny as to specific conduct which falls outside of the protection of the Second Amendment and which may be properly curbed by gun regulations.

<u>United States v. Minter</u>, No. 3:22-CR-135, 2022 WL 10662252, at *6 (M.D. Pa. Oct. 18, 2022); <u>see also</u>, <u>United States v. Siddoway</u>, No. 1:21-CR-00205-BLW, 2022 WL 4482739, at *1 (D. Id. Sept. 27, 2022) (noting that "at least five justices" explicitly suggested that <u>Heller</u> was not overruled).

Even though the majority opinion in <u>Bruen</u> did not address the issue specifically, it did say that its holding was "in keeping with <u>Heller</u>." <u>Id</u>. at 2126. There, while finding that a District of Columbia statute banning possession of a handgun in the home violated the Second Amendment, the Supreme Court in <u>Heller</u> also made clear that "nothing in our opinion should be taken to cast

5

doubt on longstanding prohibitions on the possession of firearms by felons[.]" Heller, 554 U.S. at 626. Bruen does not appear to even implicitly cast doubt on this statement in Heller.

In making the observation about the "law-abiding citizen" language in Bruen, the Court is not weighing-in on the simmering debate about whether a felon is no longer one "of the people" mentioned in the Second Amendment. Compare, United States v. Medrano, No. 3:21-CR-39, 2023 WL 122650, at *2 (N.D.W. Va. Jan. 6, 2023) ("The bottom line is Mr. Medrano's status as a felon removes him from 'the people' enumerated in the Second Amendment"); with United States v. Coombes, No. 22-CR-00189-GKF, 2022 WL 4367056, at *4 (N.D. Okla. Sept. 21, 2022) ("Based on existing precedent and well-established canons of construction, the court declines to carve out felons from the scope of the Second Amendment's protection of 'the people.'"); see also, Heller, 554 U.S. at 581 ("We start therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans."). Rather, the point is that the Supreme Court was not addressing the question of whether felons should be disarmed. This leads to the second observation.

Absent a clear directive from the Supreme Court, this Court is bound by Sixth Circuit precedent. See Taylor v. United States, No. 3:18 C 776, 2019 WL 2249557, at *4 (M.D. Tenn. May 24, 2019) ("As a district court within the Sixth Circuit, we are bound to follow the decisions of the Sixth Circuit Court of Appeals."); Durham v. Martin, No. 3:17 CV 1172, 2019 WL 2123262, at *9 (M.D. Tenn. May 14, 2019) (stating that a "district court is bound to follow the holding of a prior decision of the Court of Appeals for the circuit in which the district court is located until that binding precedent is expressly overruled"). In published opinions, the Sixth Circuit has long-rejected Second Amendment challenges to Section 922(g). See e.g., United States v. Napier, 233 F.3d 394, 403 (6th

6

Case 3:22-cr-00014   Document 116   Filed 02/06/23   Page 6 of 13 PageID #: 342

Cir. 2000); United States v. Warin, 530 F.2d 103, 106 (6th Cir. 1976). It has done so even post-Heller. Stimmel v. Sessions, 879 F.3d 198, 206 (6th Cir. 2018); United States v. Carey, 602 F.3d 738, 741 (6th Cir. 2010). The Court does not read Bruen as legitimately calling such authority into doubt.

Thus far, the Court has discussed Bruen's potential impact on charges brought under Section 922(g)(1). The Court reaches the same conclusion with respect to Count Three alleging that C. Pickett possessed a firearm after having previously been convicted of a misdemeanor crime of violence in violation of Section 922(g)(9). Just as with Section 922(g)(1), the majority of courts to have addressed the issue post-Bruen have found Section 922(g)(9) constitutional. See e.g., United States v. Bernard, No. 22-CR-03 CJW-MAR, 2022 WL 17416681, at *6 (N.D. Iowa Dec. 5, 2022); United States v. Anderson, No. 21CR00013, 2022 WL 10208253, at *1 (W.D. Va. Oct. 17, 2022); United States v. Nutter, No. 21-cr-00142, 2022 WL 3718518, at *6-7 (S.D.W. Va. Aug. 29, 2022); United States v. Jackson, No. CR-22-59, 2022 WL 3582504, at *3 (W.D. Okla. Aug. 19, 2022).[3] And, just as with Section 922(g)(1), the Sixth Circuit has suggested that Section 922(g)(9) is constitutional, even post-Heller. See Laubis v. Witt, 597 F. App'x 827, 831 (6th Cir. 2015) (collecting cases for the proposition that a "number of courts have held that § 922(g)(9) does not violate the Second Amendment").

---

[3] There is, however, a recent and notable exception. In United States v. Rahimi, No. 21-11001, ___ F.4th ___, (February 2, 2023) a panel of the Fifth Circuit found Section 922(g)(9) unconstitutional in light of Bruen. While this out-of circuit precedent is not controlling, it is worthy of due consideration. Nevertheless, because the Court does not find Bruen as being a straightforward directive in relation to gun crimes that violate Section 922(g), the Court is bound by Sixth Circuit precedent. And the likelihood that the Fifth Circuit will rehear Rahimi en banc cannot be ignored.

## II. D. Pickett's Motion to Sever Counts (Doc. No. 89)

In his motion, D. Pickett moves to sever counts of the Superseding Indictment "on the grounds that under Rule 8 of the Rules of Criminal Procedure both the joinder of offenses and joinder of defendants is improper." (Doc. No. 89 at 1). Specially, he asks the Court "to sever counts one, two, three, four and five, from counts six, seven, and eight." (Id.). The Government opposes the request. (Doc. No. 104). In a later filing (Doc. No. 113), however, the Government submits that if a severance is granted it should be as to the date(s) of the alleged offenses, not as to the Defendant allegedly involved.

In table form, the charges in the Superseding Indictment are as follows:

| **March 18, 2021**<br><br>Counts One through Four | **August 31, 2021**<br><br>Count Five | **December 21, 2021**<br><br>Counts Six through Eight |
|---|---|---|
| •Possession of Ammunition | •Possession of a Firearm | •Possess/Intent to Distribute Fentanyl and Marijuana<br><br>•Possession of Firearm/drug trafficking crime<br><br>•Felon in Possession |
| All Defendants | D. Gleaves | D. Pickett |

Thus, assuming severance is appropriate, the parties agree that the felon in possession of ammunition/firearm charges (March 18, 2021 and August 31, 2021) should be tried together. They also agree that a separate trial should be held involving D. Pickett and his alleged drug trafficking/firearm violations regarding the events that occurred on December 21, 2021. Having considered the joinder and severance rules, the Court agrees that this is the proper resolution of the

8

Motion to Sever.

Rule 8 Federal Rules of Criminal Procedure permits a single indictment to join multiple offenses (Fed. R. Crim. P. 8(a)), and/or multiple defendants (Fed. R. Crim. P. 8(b)). The purpose of the rule is to "promote the goals of trial convenience and judicial efficiency." United States v. Tran, 433 F.3d 472, 478 (6th Cir. 2006). Hence, the "general rule" is that "persons jointly indicted should be tried together because 'there is almost always common evidence against the joined defendants that allows for the economy of a single trial.'" United States v. Lopez, 309 F.3d 966, 971 (6th Cir. 2002) (quoting United States v. Phibbs, 999 F.2d 1053, 1067 (6th Cir.1993)). Similarly, there is judicial economy when all charges against a single defendant are resolved in a single trial. United States v. Wirsing, 719 F.2d 859, 862 (6th Cir. 1983).

Whether multiple defendants or multiple counts have been properly joined is to be determined based upon the four corners of the indictment. See United States v. James, 496 Fed. App'x 541, 546 (6th Cir. 2012) (stating that joinder of defendants is determined based upon the allegations in the indictment); United States v. Lopez, 309 F.3d 966, 971 (6th Cir. 2002) (stating the same regarding joinder of counts) (citing Schaffer v. United States, 362 U.S. 511, 513-14 (1960)). Misjoinder is a question of law, both in relation to the joinder of offenses under Rule 8(a), United States v. Deitz, 577 F.3d 672, 691 (6th Cir. 2009), and defendants under Rule 8(b), United States v. Frost, 125 F.3d 346, 389 (6th Cir. 1997).

"If the requirements of Rule 8 are not met, 'the district court has no discretion on the question of severance.'" United States v. Cody, 498 F.3d 582, 586 (6th Cir. 2007) (citation omitted). "Severance in such a case is mandatory." United States v. Lewis, 363 F. App'x 382, 390 (6th Cir. 2010)(qoting United States v. Hatcher, 680 F.2d 438, 441 (6th Cir.1982)).

In this case, and recognizing that "[j]oint trials are favored," United States v. Tocco, 200 F.3d 401, 413 (6th Cir. 2000), and that "severance is not the norm," United States v. Tisdale, 980 F.3d 1089, 1094 (6th Cir. 2020), the Court has difficulty perceiving any real connection between the crimes alleged in the first five counts and those alleged in the last three counts given the Superseding Indictment's language. Apart from all three Defendants being charged together for possessing ammunition on March 18, 2021, the face of the indictment does not suggest any relationship between those crimes and D. Pickett allegedly dealing drugs while armed months later. At least the first five counts, which commonly allege the unlawful possession of ammunition/firearms, are somewhat close in time, and do not get into the extraneous alleged drug dealing by only one defendant.

For joinder to be proper under Rule 8(a), the offenses must be (1) "of the same or similar character"; (2) "based on the same act or transaction"; or (3) "connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a); United States v. Howell, 17 F.4th 673, 686 (6th Cir. 2021). Alleged drug trafficking by only one defendant and the unlawful possession of a firearm in relation thereto does not appear to meet any of these criterion when the remaining crimes allege simple ammunition/firearm possession some four and nine months earlier. The Government's statement in its response brief that it "will call no witness who will discuss both incidents" (Doc. No. 104 at 9) only underscores the lack of a connection.

Regardless, even if the joinder of offenses and defendants was proper under Rule 8, a severance may still be ordered. Rule 14 provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

10

Fed. R. Crim. P. 14(a). Whether to grant a severance lies within the sound discretion of the Court and abuse occurs only where there is a "strong showing of prejudice," that is, "that joinder would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence." Tran, 433 F.3d at 478.

In its brief in response to the Motion to Sever, the Government sets forth the evidence it believes it can prove at trial. As described, the March 18, 2021 incident is seemingly a modern-day version of the gunfight at the O.K. Corral. It began as Gleaves was entering the Camel Carwash and opened fire on the Picketts, who were in the car vacuuming area. It continued as Gleaves drove-off and the Picketts returned fire while pursuing him on foot. Tragically, an innocent 14-year old was severely injured during the shoot-out.[4]

The December 21, 2021 incident arose when Metro Police were searching for D. Pickett to arrest him on outstanding warrants. At the time, D. Pickett was wearing an ankle monitor due to probation violations. He was ultimately located at a gas station and arrested. A search incident to that arrest and an inventory search of the vehicle he had been driving resulted in the firearm and drug charges in Counts Six through Eight.

Tellingly, in its recitation of the facts, the Government does not state that any of the outstanding warrants for D. Picketts' arrest related to the March 18, 2021 shoot-out. Nor does it indicate how Gleaves's alleged possession of a firearm on August 31, 2021 fits into the overall picture.

Assuming the Government is allowed to go into some detail about the March 18, 2021

---

[4] Because Defendants are only charged with possessing ammunition on March 18, 2021, it is an open question as to how much detail will be allowed to be presented to the jury regarding the alleged shoot-out. That issue, however, is for another day.

11

incident, a joint trial would be prejudicial to each Defendant, particularly given there is no conspiracy alleged. C. Pickett and Gleaves would be prejudiced because there is no suggestion that they are drug dealers, let alone dealers who ply their trade while armed. Nevertheless, that could be an inference the jury would draw, a cautionary instruction notwithstanding. Cf. Zafiro v. United States, 506 U.S. 534, 539-40 (1993) (holding that sometimes the risk of prejudice can be allayed by proper cautionary instructions). Likewise, D. Pickett will be prejudiced because the jury would be informed that, not only is he allegedly a gun-carrying drug dealer, he is willing to use a firearm with reckless abandon. For these reasons, the Court finds it best to sever the Counts relating to drug-trafficking by D. Pickett (Counts Six through Eight) from those relating to the simple possession of ammunition and firearm charges by him and the other Defendants (Counts One through Five).

In reaching its decision, the Court toyed with the idea of simply severing the Counts against D. Pickett from those of his co-Defendants. While this would be a logical and clean severance, it would reguire the Government to prove the March 18, 2021 incident twice.[5] Further, while the severance of Count Six to Eight from the remaining counts will require D. Pickett to go to trial twice, he cannot complain because that is what he requested in the first place.

### III. Conclusion

For the foregoing reasons, the Motions to Dismiss (Doc. Nos. 72, 74, 90) will be denied. The Motion to Sever (Doc. No. 89) will be granted. The Court will first proceed to trial on the charges alleged in Counts Six through Eight against D. Picket with trial on the remaining counts to be held at a later date shortly thereafter.

---

[5] Even though the Government will still have to participate in two trials, the Court does not see this as unduly burdensome particularly given the absence of any overlapping witnesses and the prejudice to Defendants were the case not severed in some fashion.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

13